UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

U.S. DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN-WI
FILED

UNITED STATES OF AMERICA,

                                Plaintiff,

                v.

PAUL BOURAXIS,
FREIDA BOURAXIS,
ANDREAS BOURAXIS, and
REIAD AWADALLAH,

                                Defendants.

2015 JUN 23 P 3: 07

JON W. SANFILIPPO
      CLERK  **15-CR-125**

Case No. _____
[18 U.S.C. §§ 371 and 1344
and 26 U.S.C. §§ 7201 and 7206(1)]

---

## INDICTMENT

---

## COUNT ONE
(18 U.S.C. § 371)

**THE GRAND JURY CHARGES**:

1.      Beginning by at least January 2007, and continuing until at least September 2012, the exact dates being unknown to the grand jury, in the State and Eastern District of Wisconsin, and elsewhere,

### PAUL BOURAXIS,
### FREIDA BOURAXIS,
### ANDREAS BOURAXIS, and
### REIAD AWADALLAH,

referred to herein collectively as "the defendants," knowingly conspired with each other, and with others known and unknown to the grand jury, to defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful Government functions of the Internal Revenue Service ("IRS") of the U.S. Treasury Department in the ascertainment, computation,

assessment, and collection of the revenue, namely federal income taxes and federal payroll taxes for employees of businesses owned and operated by the defendants.

2. At all times relevant:

a. Paul Bouraxis and Freida Bouraxis were husband and wife and resided together in Franklin, Wisconsin.

b. Paul Bouraxis was the owner and operator of several businesses including Bouraxis, Limited ("Bouraxis, Ltd."), through which he operated a fast-food restaurant known as "Omega Burger" located at 7041 South 27th Street, Franklin, Wisconsin.

c. Andreas Bouraxis was the son of Paul and Freida Bouraxis and resided in Franklin, Wisconsin.

d. Andreas Bouraxis was the owner, operator, and president of El Fuego, Limited ("El Fuego.") and El Beso Mexican Restaurante, Limited ("El Beso"), through which he operated restaurants located, respectively, at 909 W. Layton Avenue, Milwaukee, Wisconsin, and 5030 S. 74th Street, Greenfield, Wisconsin.

e. Reiad Awadallah ("Awadallah"), who is also known as "Ray," was married to the daughter of Paul and Freida Bouraxis and resided in Franklin, Wisconsin.

f. V.A., who is the sister of Paul Bouraxis, worked as a manager at El Beso and Omega Burger.

g. Freida Bouraxis provided bookkeeping services at Omega Burger, El

2

Fuego, and El Beso. Freida Bouraxis also instructed other individuals, including V.A., how to maintain the books and records for the restaurants, including El Beso.

      h.    Awadallah was the general manager of El Fuego and managed the day-to-day operation of the restaurant.

3.    Under federal law, employers such as Bouraxis Ltd., El Fuego, and El Beso are required to collect payroll taxes, which include federal income taxes, Social Security taxes, and Medicare taxes, from the wages paid to their employees and to pay over these taxes to the United States through the Internal Revenue Service (IRS). This is commonly referred to as the "trust fund" portion of payroll taxes.

4.    Employers are also required to pay payroll taxes to the IRS in an amount equal to the employees' Social Security and Medicare taxes. This is commonly referred to as the "matching portion" of payroll taxes.

5.    Federal law further requires employers to file with the IRS quarterly tax returns (Forms 941) reporting the total wages paid to their employees during the quarter and the corresponding payroll taxes due and owing to the United States. These quarterly returns must be filed by the last day of the month following the end of the quarter in question.

### Manner and means of conspiracy

6.    The defendants used the following manner and means, among others, to accomplish the goals of their conspiracy:

      a.    The defendants skimmed cash from the receipts of Omega Burger, El Fuego, and El Beso (collectively "the restaurants") and did not deposit the

3

skimmed cash to the restaurants' bank accounts.

b.    The defendants created records for each of the restaurants that did not include the cash receipts the defendants had skimmed from their businesses. The defendants provided these records to the accountants responsible for preparing the restaurants' tax returns, including state sales tax returns and state and federal income tax returns. As a result, these returns understated the receipts of the restaurants and the associated tax obligations.

c.    The defendants provided weekly payroll records to the restaurants' accountants that understated the hours employees had worked. The accountants used these records to generate payroll checks for the employees and quarterly payroll tax returns for the restaurants.

d.    The defendants paid additional wages to restaurant employees in cash and failed to withhold or otherwise account for the payroll taxes associated with these cash wage payments.

e.    The defendants concealed these cash payments from the accountants responsible for preparing quarterly payroll tax returns for the restaurants. As a result, the payroll tax returns prepared for the restaurants and filed with the IRS understated the wages paid to restaurant employees and the associated payroll taxes.

f.    The defendants, and others working in concert with the defendants and at their direction, maintained handwritten records for the restaurants accurately reflecting the daily receipts of the businesses, including the

4

skimmed cash receipts, and the true wages paid to employees, including cash wage payments. The defendants concealed these records from the restaurants' accountants.

g.  The defendants used electronic point-of-sale systems at El Fuego and El Beso to record accurately sales and to keep track of employee hours. The defendants did not provide records from these systems to the accountants responsible for preparing payroll records and tax returns for the restaurants.

h.  The defendants received a portion of the skimmed cash receipts but did not disclose the cash to their accountants. As a result, the defendants' personal tax returns did not include the cash as income.

i.  The defendants did not deposit to bank accounts cash they accumulated from their skim operation and maintained a cash hoard at various locations totaling more than $1.7 million.

j.  The defendants used cash skimmed from the restaurants to purchase jewelry and precious metals, including 33, 100-ounce bars of silver.

k.  Paul and Andreas Bouraxis used skimmed cash receipts to make loans to third parties and did not disclose the interest they received on these loans to their accountants nor report the interest income on their personal income tax returns.

## Acts in furtherance of the conspiracy

7.  The defendants, and others acting on their behalf and at their direction, performed the following acts to accomplish the goals of the conspiracy:

5

a.   On a daily basis, the defendants skimmed cash from the restaurants' receipts.

b.   The defendants created false and fraudulent records that did not include the skimmed cash receipts and provided those records to the restaurants' accountants.

c.   On a weekly basis, the defendants provided false and fraudulent employee time sheets to the restaurants' accountants that failed to list all of the employees who worked at the restaurants and understated the hours the listed employees had worked during the week.

d.   On a weekly basis, the defendants paid all or a part of the wages owed to the restaurants' employees in cash, from which no payroll taxes had been withheld.

e.   The defendants, and others working with them and at their direction, maintained a second set of books for the restaurants reflecting the actual receipts for the restaurants and the cash wage payments to the employees. The defendants concealed these records from the accountants for the restaurants.

f.   The defendants caused false payroll tax returns (Forms 941) to be filed with the IRS on behalf of Bouraxis Ltd., El Fuego, and El Beso, including the returns that form the basis of the offenses charged in counts 7 through 32 of this indictment.

6

g.     The defendants received cash from the receipts of the restaurants and did not disclose this income to the accountants who prepared their personal income tax returns.

h.     Defendants Paul Bouraxis and Andreas Bouraxis received interest payments from third parties to whom they had made loans. Paul Bouraxis and Andreas Bouraxis concealed these payments from the accountants who prepared their respective personal income tax returns.

i.     The defendants filed false personal income tax returns (Forms 1040) with the IRS that failed to report substantial income they received from their operation of the restaurants and the associated taxes on that income. These include the returns that form the basis of the offenses charged in counts 2 through 6 of this indictment.

All in violation of Title 18, United States Code, Section 371.

7

## COUNT TWO
(26 U.S.C. § 7201)

**THE GRAND JURY FURTHER CHARGES:**

8.       On or about October 17, 2011, in the State and Eastern District of Wisconsin,

## PAUL BOURAXIS,

who during the calendar year 2010 was married and a resident of Franklin, Wisconsin, did willfully and knowingly attempt to evade and defeat a large part of the income tax due and owing by him to the United States of America for the calendar year 2010, by preparing and causing the preparation of, and filing with the Internal Revenue Service ("IRS"), a false and fraudulent 2010 U.S. Individual Income Tax Return, Form 1040, for himself and his wife. Specifically, Paul Bouraxis filed with the IRS a return in which he stated that for the calendar year 2010 he and his wife had adjusted gross income of -$43,705, taxable income of $0, and that the amount of tax due and owing thereon was $0, whereas, as Paul Bouraxis knew and believed, during 2010, he and his wife actually had adjusted gross income of approximately $562,317, taxable income of approximately $273,408, and that, as a result, the actual amount of income tax due and owing to the United States of America by Paul Bouraxis and his wife for 2010 was approximately $168,047.

All in violation of Title 26, United States Code, Section 7201.

8

## COUNT THREE
(26 U.S.C. § 7201)

**THE GRAND JURY FURTHER CHARGES**:

9.     On or about July 11, 2011, in the State and Eastern District of Wisconsin,

**ANDREAS BOURAXIS,**

who during the calendar year 2010 was married and a resident of Franklin, Wisconsin, did willfully and knowingly attempt to evade and defeat a large part of the income tax due and owing by him to the United States of America for the calendar year 2010, by preparing and causing the preparation of, and filing with the Internal Revenue Service ("IRS"), a false and fraudulent 2010 U.S. Individual Income Tax Return, Form 1040, for himself and his wife. Specifically, Andreas Bouraxis filed with the IRS a return in which he stated that for the calendar year 2010 he and his wife had adjusted gross income of $687,030, taxable income of $617,894, and that the amount of tax due and owing thereon was $185,545, whereas, as Andreas Bouraxis knew and believed, during 2010, he and his wife actually had adjusted gross income of approximately $1,278,254, taxable income of approximately $1,209,118, and that, as a result, the actual amount of income tax due and owing to the United States of America by Andreas Bouraxis and his wife for 2010 was approximately $393,499.

All in violation of Title 26, United States Code, Section 7201.

9

## COUNT FOUR
### (26 U.S.C. § 7206(1))

**THE GRAND JURY FURTHER CHARGES**:

10.    On or about April 15, 2010, in the State and Eastern District of Wisconsin,

### REIAD AWADALLAH,

did willfully make and subscribe a joint United States Individual Income Tax Return (Form 1040, hereinafter "return") for the calendar year 2009, which was verified by a written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which return Awadallah did not believe to be true and correct as to every material matter, in that Awadallah indicated on the return that, for the calendar year 2009 he and his wife had adjusted gross income of $50,184, taxable income of $726, and that the amount of tax due and owing thereon was $0, whereas, as Awadallah knew and believed, during 2009, he and his wife actually had adjusted gross income of approximately $78,417, taxable income of approximately $29,523, and that, as a result, the actual amount of income tax due and owing to the United States of America by Awadallah and his wife for 2009 was approximately $3,459.

All in violation of Title 26, United States Code, Section 7206(1).

## COUNT FIVE
### (26 U.S.C. § 7206(1))

**THE GRAND JURY FURTHER CHARGES**:

11.     On or about April 15, 2011, in the State and Eastern District of Wisconsin,

**REIAD AWADALLAH,**

did willfully make and subscribe a joint United States Individual Income Tax Return (Form 1040, hereinafter "return") for the calendar year 2010, which was verified by a written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which return Awadallah did not believe to be true and correct as to every material matter, in that Awadallah indicated on the return that, for the calendar year 2010 he and his wife had adjusted gross income of $36,400, taxable income of $0, and that the amount of tax due and owing thereon was $0, whereas, as Awadallah knew and believed, during 2009, he and his wife actually had adjusted gross income of approximately $91,715, taxable income of approximately $52,520, and that, as a result, the actual amount of income tax due and owing to the United States of America by Awadallah and his wife for 2010 was approximately $9,555.

All in violation of Title 26, United States Code, Section 7206(1).

**COUNT SIX**
(26 U.S.C. § 7206(1))

**THE GRAND JURY FURTHER CHARGES:**

12.　　On or about April 15, 2012, in the State and Eastern District of Wisconsin,

**REIAD AWADALLAH,**

did willfully make and subscribe a joint United States Individual Income Tax Return (Form 1040, hereinafter "return") for the calendar year 2011, which was verified by a written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which return Awadallah did not believe to be true and correct as to every material matter, in that Awadallah indicated on the return that, for the calendar year 2011 he and his wife had adjusted gross income of $53,525, taxable income of $4,623, and that the amount of tax due and owing thereon was $0, whereas, as Awadallah knew and believed, during 2011, he and his wife actually had adjusted gross income of approximately $104,697, taxable income of approximately $60,660, and that, as a result, the actual amount of income tax due and owing to the United States of America by Awadallah and his wife for 2011 was approximately $7,796.

　　　All in violation of Title 26, United States Code, Section 7206(1).

12

## COUNTS SEVEN - FIFTEEN
(26 U.S.C. § 7201)

**THE GRAND JURY FURTHER CHARGES**:

### Allegations Common to Counts 7 - 15

13.    At all times relevant:

      a.    Paul Bouraxis was a resident of Franklin, Wisconsin, which is in the State and Eastern District of Wisconsin.

      b.    Paul Bouraxis was the owner of Bouraxis, Limited ("Bouraxis Ltd."), through which he operated a restaurant known as Omega Burger located at 7041, South 27th Street, Franklin.

14.    Paul Bouraxis willfully attempted to evade and defeat the assessment and payment of a large part of the federal income taxes required to be withheld from the compensation paid to employees of Omega Burger and the Federal Insurance Contributions Act taxes (collectively referred to as "payroll taxes") on such compensation, which taxes were due and owing to the United States of America, by the following affirmative acts:

      a.    Paul Bouraxis, and others working in concert with him and at his direction, paid wages to employees of Omega Burger in cash and did not withhold income taxes or other payroll taxes from such cash payments.

      b.    Paul Bouraxis provided false records to the accountants he retained to provide accounting services, including preparing payroll tax returns, for Bouraxis Ltd. These records understated the compensation paid to employees of Omega Burger because they did not reflect the cash wages paid to employees.

      c.    As a result, the quarterly payroll tax returns (Forms 941) prepared for

13

Bouraxis, Ltd. at Paul Bouraxis's direction and filed with the Internal Revenue Service substantially understated the wages paid to the employees of Omega Burger and the associated payroll taxes due and owing to the United States.

15. On or about the indicated dates, in the State and Eastern District of Wisconsin,

**PAUL BOURAXIS**

willfully attempted to evade and defeat the assessment and payment of a large part of the federal income taxes required to be withheld from the compensation paid to employees of Bouraxis, Ltd. and the Federal Insurance Contributions Act taxes (collectively referred to as "payroll taxes") on such compensation, which taxes were due and owing to the United States of America, by the affirmative acts described above in paragraph 14 of this indictment, and by causing an Employer's Quarterly Payroll Tax Return (Form 941) for Bouraxis, Ltd. to be filed with the Internal Revenue Service that reported the indicated amount of employee compensation and associated payroll taxes, when, as Paul Bouraxis then and there well knew, the employees had actually received the indicated compensation, upon which there was due and owing to the United States of America substantial additional payroll taxes.

| Count | Date of Offense | Quarter (Date ending on) | Reported Total Wages | Reported Payroll taxes | Actual Total Wages |
|-------|-----------------|--------------------------|----------------------|------------------------|--------------------|
| 7 | July 31, 2009 | Second quarter of 2009 (June 30, 2009) | $70,623.62 | $15,794.35 | $144,173.62 |
| 8 | October 31, 2009 | Third quarter of 2009 (September 30, 2009) | $68,481.50 | $14,741.00 | $93,641.50 |
| 9 | January 31, 2010 | Fourth quarter of 2009 (December 31, 2009) | $63,327.77 | $13,624.79 | $100,977.77 |
| 10 | April 30, 2010 | First quarter of 2010 (March 31, 2010) | $56,002.78 | $12,066.54 | $77,780.78 |
| 11 | July 31, 2010 | Second quarter of 2010 (June 30, 2010) | $57,451.42 | $12,195.43 | $110,956.42 |
| 12 | January 31, 2011 | Fourth quarter of 2010 (December 31, 2010) | $58,838.06 | $12,793.59 | $121,483.06 |

14

| Count | Date of Offense | Quarter (Date ending on) | Reported Total Wages | Reported Payroll taxes | Actual Total Wages |
|---|---|---|---|---|---|
| 13 | October 31, 2011 | Third quarter of 2011 (September 30, 2011) | $76,599.89 | $11,899.41 | $84,927.89 |
| 14 | January 31, 2012 | Fourth quarter of 2011 (December 31, 2011) | $72,677.13 | $11,152.39 | $104,678.13 |
| 15 | April 30, 2012 | First quarter of 2012 (March 31, 2012) | $81,066.38 | $12,851.16 | $84,066.38 |

All in violation of Title 26, United States Code, Section 7201.

## COUNTS SIXTEEN – TWENTY-SEVEN
(26 U.S.C. § 7201)

**THE GRAND JURY FURTHER CHARGES:**

### Allegations Common to Counts 16 - 27

16. At all times relevant:

    a. Andreas Bouraxis was a resident of Franklin, Wisconsin, which is in the State and Eastern District of Wisconsin.

    b. Andreas Bouraxis was the owner of El Fuego Limited ("El Fuego."), through which he operated a restaurant located at 909 W. Layton Avenue, Franklin, Wisconsin.

17. Andreas Bouraxis willfully attempted to evade and defeat the assessment and payment of a large part of the federal income taxes required to be withheld from the compensation paid to employees of El Fuego and the Federal Insurance Contributions Act taxes (collectively referred to as "payroll taxes") on such compensation, which taxes were due and owing to the United States of America, by the following affirmative acts:

    a. Andreas Bouraxis, and others working in concert with him and at his direction, paid wages to employees of El Fuego in cash and did not withhold income taxes or other payroll taxes from such cash payments.

    b. Andreas Bouraxis provided false records to the accountants he retained to provide accounting services, including preparing payroll tax returns, for El Fuego. These records understated the compensation paid to employees of El Fuego because they did not reflect the cash wages paid to employees.

    c. As a result, the quarterly payroll tax returns (Forms 941) prepared for El Fuego at the direction of Andreas Bouraxis and filed with the Internal

16

Revenue Service substantially understated the wages paid to the employees of El Fuego and the associated payroll taxes due and owing to the United States.

18.    On or about the indicated dates, in the State and Eastern District of Wisconsin,

**ANDREAS BOURAXIS**

willfully attempted to evade and defeat the assessment and payment of a large part of the federal income taxes required to be withheld from the compensation paid to employees of El Fuego and the Federal Insurance Contributions Act taxes (collectively referred to as "payroll taxes") on such compensation, which taxes were due and owing to the United States of America, by the affirmative acts described above in paragraph 17 of this indictment, and by causing an Employer's Quarterly Payroll Tax Return (Form 941) for El Fuego to be filed with the Internal Revenue Service that reported the indicated amount of employee compensation and associated payroll taxes, when, as Andreas Bouraxis then and there well knew, the employees had actually received the indicated compensation, upon which there was due and owing to the United States of America substantial additional payroll taxes.

| <u>Count</u> | <u>Date of Offense</u> | Quarter (Date ending on) | Reported Total Wages | Reported Payroll taxes | Actual Total Wages |
|---|---|---|---|---|---|
| 16 | October 31, 2009 | Third quarter of 2009 (September 30, 2009) | $200,106.45 | $36,329.71 | $395,106.45 |
| 17 | January 31, 2010 | Fourth quarter of 2009 (December 31, 2009) | $228,031.51 | $49,859.90 | $446,531.51 |
| 18 | April 30, 2010 | First quarter of 2010 (March 31, 2010) | $248,611.78 | $55,843.96 | $415,611.78 |
| 19 | July 31, 2010 | Second quarter of 2010 (June 30, 2010) | $285,026.73 | $63,836.95 | $492,526.73 |
| 20 | October 31, 2010 | Third quarter of 2010 (September 30, 2010) | $299,110.43 | $63,791.95 | $525,110.43 |
| 21 | January 31, 2011 | Fourth quarter of 2010 (December 31, 2010) | $279,342.76 | $59,847.59 | $472,842.76 |
| 22 | April 30, 2011 | First quarter of 2011 (March 31, 2011) | $284,637.44 | $57,078.40 | $462,737.44 |

| Count | Date of Offense | Quarter (Date ending on) | Reported Total Wages | Reported Payroll taxes | Actual Total Wages |
|---|---|---|---|---|---|
| 23 | July 31, 2011 | Second quarter of 2011 (June 30, 2011) | $313,060.73 | $61,797.79 | $475,323.73 |
| 24 | October 31, 2011 | Third quarter of 2011 (September 30, 2011) | $374,638.32 | $69,292.16 | $521,530.32 |
| 25 | January 31, 2012 | Fourth quarter of 2011 (December 31, 2011) | $359,859.11 | $68,681.15 | $464,841.11 |
| 26 | April 30, 2012 | First quarter of 2012 (March 31, 2012) | $378,510.96 | $71,128.20 | $455,370.96 |
| 27 | July 31, 2012 | Second quarter of 2012 (June 30, 2012) | $438,328.40 | $85,723.33 | $521,380.40 |

All in violation of Title 26, United States Code, Section 7201.

## COUNTS TWENTY-EIGHT – THIRTY-TWO
(26 U.S.C. § 7201)

**THE GRAND JURY FURTHER CHARGES**:

### Allegations Common to Counts 28 - 32

19.    At all times relevant:

    a.    Andreas Bouraxis was a resident of Franklin, Wisconsin, which is in the State and Eastern District of Wisconsin.

    b.    Andreas Bouraxis was the owner of El Beso Mexican Restaurante, Limited ("El Beso."), through which he operated a restaurant located at 5030 S. 74th Street, Greenfield, Wisconsin.

20.    Andreas Bouraxis willfully attempted to evade and defeat the assessment and payment of a large part of the federal income taxes required to be withheld from the compensation paid to employees of El Beso and the Federal Insurance Contributions Act taxes (collectively referred to as "payroll taxes") on such compensation, which taxes were due and owing to the United States of America, by the following affirmative acts:

    a.    Andreas Bouraxis, and others working in concert with him and at his direction, paid wages to employees of El Beso in cash and did not withhold income taxes or other payroll taxes from such cash payments.

    b.    Andreas Bouraxis provided false records to the accountants he retained to provide accounting services, including preparing payroll tax returns, for El Beso.  These records understated the compensation paid to employees of El Beso because they did not reflect the cash wages paid to employees.

    c.    As a result, the quarterly payroll tax returns (Forms 941) for El Beso prepared at the direction of Andreas Bouraxis and filed with the Internal

19

Revenue Service substantially understated the wages paid to the employees of El Beso and the associated payroll taxes due and owing to the United States.

21.    On or about the indicated dates, in the State and Eastern District of Wisconsin,

**ANDREAS BOURAXIS**

willfully attempted to evade and defeat the assessment and payment of a large part of the federal income taxes required to be withheld from the compensation paid to employees of El Beso and the Federal Insurance Contributions Act taxes (collectively referred to as "payroll taxes") on such compensation, which taxes were due and owing to the United States of America, by the affirmative acts described above in paragraph 20 of this indictment, and by causing an Employer's Quarterly Payroll Tax Return (Form 941) for El Beso to be filed with the Internal Revenue Service that reported the indicated amount of employee compensation and associated payroll taxes, when, as Andreas Bouraxis then and there well knew, the employees had actually received the indicated compensation, upon which there was due and owing to the United States of America substantial additional payroll taxes.

| Count | Date of Offense | Quarter (Date ending on) | Reported Total Wages | Reported Payroll taxes | Actual Total Wages |
|-------|-----------------|--------------------------|----------------------|------------------------|--------------------|
| 28 | July 31, 2011 | Second quarter of 2011 (June 30, 2011) | $341,140.38 | $63,509.69 | $572,011.38 |
| 29 | October 31, 2011 | Third quarter of 2011 (September 30, 2011) | $386,568.12 | $76,416.40 | $523,955.62 |
| 30 | January 31, 2012 | Fourth quarter of 2011 (December 31, 2011) | $330,061.73 | $64,147.94 | $416,262.73 |
| 31 | April 30, 2012 | First quarter of 2012 (March 31, 2012) | $381,086.71 | $76,866.24 | $445,848.71 |
| 32 | July 31, 2012 | Second quarter of 2012 (June 30, 2012) | $419,455.27 | $92,805.59 | $486,914.27 |

All in violation of Title 26, United States Code, Section 7201.

20

**THE GRAND JURY FURTHER CHARGES**:

22.     Beginning in approximately September 2009 and continuing thereafter until approximately October 2010, the exact dates being unknown to the grand jury, in the State and Eastern District of Wisconsin,

### PAUL BOURAXIS

devised, participated in, and carried out a scheme to defraud a financial institution, namely Associated Bank, N.A., the deposits of which were at all times insured by the federal government through the Federal Deposit Insurance Corporation ("FDIC"), which scheme is more fully described below.

23.     Paul Bouraxis's scheme to defraud Associated Bank was essentially as follows:

a.     Paul Bouraxis obtained a series of loans and lines of credit from Associated Bank, both in his own name and in the name of various businesses he owned and operated (herein referred collectively as "Associated Bank loans.").

b.     To induce Associated Bank to make the loans to his businesses, Paul Bouraxis personally guaranteed payment of the loans.

c.     In connection with obtaining and maintaining the Associated Bank loans, Paul Bouraxis provided Associated Bank with financial information, including copies of his personal income tax returns, statements of financial condition listing his assets and liabilities, and cash flow statements detailing his income and expenses.

d.     To induce Associated Bank to re-negotiate the terms of the Associated Bank loans, Paul Bouraxis stopped making the required payments and

21

defaulted on the loans.

e.     To persuade Associated Bank to modify the terms of its loans, Paul Bouraxis provided Associated Bank with false and fraudulent financial information that failed to disclose substantial assets and income.

f.     Paul Bouraxis concealed from Associated Bank that he had substantial additional assets including more than $1.7 million in cash, gold and silver bars and jewelry, and foreign bank accounts with balances totaling more than $2 million.

g.     Paul Bouraxis provided cash flow statements to Associated Bank that falsely indicated he had only minimal monthly and annual cash flow.

h.     Paul Bouraxis misrepresented his cash flow to Associated Bank by concealing from the bank that he was skimming cash from restaurants he and other family members were operating.

i.     Paul Bouraxis further misrepresented his assets and cash flow to Associated Bank by concealing that he had made personal loans to third parties from whom he received substantial monthly interest payments.

j.     Based on the false and fraudulent financial information provided by Paul Bouraxis, Associated Bank agreed to accept interest-only payments on the loans despite the fact that Paul Bouraxis had defaulted on the loans.

k.     Based in part on the false and fraudulent financial information Paul Bouraxis provided, Associated Bank elected to sell the loans to third parties at a fraction of their face value.

l.     Andreas Bouraxis purchased three of the Associated Bank loans, which had

22

a total face value of approximately $867,000, for $425,000.

24.    As a result of Paul Bouraxis' scheme, Associated Bank lost more than $4 million.

25.    On or about April 22, 2010, in the State and Eastern District of Wisconsin,

### PAUL BOURAXIS

knowingly, and with intent to defraud, executed and attempted to execute his scheme to defraud Associated Bank by providing to Associated Bank false and fraudulent financial information along with a Certification of Financial Statements, in which Paul Bouraxis falsely represented that the financial information he provided to the bank was true and correct and that it accurately reflected his financial condition.

All in violation of Title 18, United States Code, Section 1344.

## Forfeiture Notice

26.     Upon conviction of the offense in violation of Title 18, United States Code, Section 1344, set forth in Count 33 of this Indictment, the defendant, Paul Bouraxis, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(2)(A), any property constituting, or derived from, proceeds obtained directly or indirectly, as the result of the offense.   The property to be forfeited includes, but is not limited to, the following:

a.      Approximately $1,022,281.00 in United States currency seized on or about September 5, 2012, from El Beso Restaurant located on South 74th Street in Greenfield, Wisconsin;

b.      Approximately $3,252.00 in United States currency seized on or about September 5, 2012, from El Fuego Restaurant located on West Layton Avenue in Milwaukee, Wisconsin;

c.      Approximately $16,820.00 in United States currency seized on or about September 5, 2012, from Bouraxis Investments located on South 108th Street in Greenfield, Wisconsin;

d.      Approximately $60,577.00 in United States currency seized on or about September 5, 2012, from a residence located on South 35th Street in Franklin, Wisconsin;

e.      Approximately $11,500.00 in United States currency seized on or about September 5, 2012, from a vehicle located outside a residence on South 35th Street in Franklin, Wisconsin;

f.      Approximately $40,000.00 in United States currency seized on or about September 6, 2012, from a safe deposit box located at PNC Bank on East Puetz Road in Oak Creek, Wisconsin;

g.      Miscellaneous silver and gold coins and bars seized on or about September 6, 2012, from a safe deposit box at Associated Bank on West Janesville Road in Hales Corners, Wisconsin;

h.      Approximately $282,000.00 in United States currency seized on or about September 6, 2012, from a safe deposit box located at Associated Bank on West Janesville Road in Hales Corners, Wisconsin;

i.      Miscellaneous gold and silver bars and coins seized on or about September 5, 2012, from El Beso Restaurant located on South 74th Street in Greenfield, Wisconsin;

24

j.     Miscellaneous silver and gold bars and coins seized on or about September 6, 2012, from a safe deposit box located at Tri City National Bank on South 108th Street in Hales Corners, Wisconsin;

k.     Antique currency seized on or about September 6, 2012, from a safe deposit box located at Tri City National Bank on South 108th Street in Hales Corners, Wisconsin;

l.     Approximately $299,900.00 in United States currency seized on or about September. 18, 2012, from a safe deposit box located at Johnson Bank on West Rawson Avenue in Franklin, Wisconsin;

m.     Approximately $15,000.00 in United States currency seized on or about September 18, 2012, from a safe deposit box located at American Midwest Bank on Lake Street in Antioch, Illinois; and

n.     A sum of money equal to the proceeds derived from the offense.

27.     If any of the property described above, as a result of any act or omission by a defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third person; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be subdivided without difficulty, the United States of America shall be entitled to forfeiture of substitute property, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

A TRUE BILL:

FOREPERSON

Dated: June 23, 2015

JAMES L. SANTELLE
United States Attorney